**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **HEATHER MYERS**<br>131 Friendship Road<br>Elkton, Maryland 21921<br><br>and<br><br>**JAMES MYERS**<br>131 Friendship Road<br>Elkton, Maryland 21921<br><br>       Plaintiffs,<br><br>    v.<br><br>**TOWN OF ELKTON, MARYLAND**<br>Serve:  Lewis George, Town Administrator<br>       100 Railroad Avenue<br>       Elkton, Maryland 21921<br><br>and<br><br>**OFC. ANTHONY MICHAEL DEVINE**<br>*Individually and in his Official Capacity*<br>*As a Town of Elkton Police Officer*<br>Elkton Police Department<br>100 Railroad Avenue<br>Elkton, Maryland 21921<br><br>and<br><br>**DET. DENNIS J. LASASSA**<br>*Individually and in his Official Capacity*<br>*As a Town of Elkton Police Detective*<br>Elkton Police Department<br>100 Railroad Avenue<br>Elkton, Maryland 21921<br><br>and<br><br>**DET. THOMAS FRANK SAULSBURY**<br>*Individually and in his Official Capacity*<br>*As a Town of Elkton Police Detective*<br>Elkton Police Department | Civil Case No.: _____<br><br>**\*Jury Trial Demanded\*** |

100 Railroad Avenue
Elkton, Maryland 21921

        Defendants.

_____

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiffs, James Myers and Heather Myers, by and through undersigned counsel, and sues the above-named Defendants, stating as follows:

## INTRODUCTION

1)    This suit is brought by Plaintiffs James Myers and Heather Myers following the shooting and killing of Plaintiffs' pet dog, Bella, on Plaintiffs' property by a Town of Elkton Police Officer.

2)    At the time of the shooting, Town of Elkton Police Officers trespassed on Plaintiffs' property with no legal right or justification to be there. Despite having no legal right or justification to be there, the police officers remained on Plaintiffs' property until one of the officers shot and killed Bella for no purpose and without any justification.

## JURISDICTION AND VENUE

3)    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, or treaties of the United States.

4)    Venue is proper in this forum pursuant to 28 U.S.C. § 1391 as the named Defendants carry on their principal place of business in Elkton, Maryland, and all material events occurred in Elkton, Maryland.

5)    The Plaintiffs provided notice to the Defendants of the nature of their claim in compliance with the Local Government Tort Claims Act, Md. Code, Cts. & Jud. Proc. § 5-301 *et*

*seq.*, and the Maryland State Tort Claims Act, Md. Code, State Gov't § 12-101, *et seq.*, and all conditions precedent for the filing of this lawsuit have been met.

## PARTIES

6)      Plaintiff James Myers ("**Plaintiff James**") and Plaintiff Heather Myers ("**Plaintiff Heather**," and together, the "**Plaintiffs**") are adult residents of Cecil County, Maryland.

7)      Defendant Town of Elkton, Maryland ("**Defendant Elkton**") is a body politic and corporate body that may sue and be sued. At all times mentioned, Defendant Elkton was in charge of and operated the Elkton Police Department and employed the individual Defendants as police officers and/or police detectives at all times relevant to this Complaint.

8)      Defendant Ofc. Anthony Michael Devine ("**Defendant Devine**") is an adult resident of Cecil County, Maryland, and at all times relevant to this Complaint, was a police officer employed by Defendant Elkton and the Elkton Police Department. Defendant Devine was acting under the color of state law and within the scope of his employment at all times herein.

9)      Defendant Det. Dennis J. Lasassa ("**Defendant Lasassa**") is an adult resident of Cecil County, Maryland, and at all times relevant to this Complaint, was a police detecive employed by Defendant Elkton and the Elkton Police Department. Defendant Lasassa was acting under the color of state law and within the scope of his employment at all times herein.

10)      Defendant Det. Thomas Frank Saulsbury ("**Defendant Saulsbury**") is an adult resident of Cecil County, Maryland, and at all times relevant to this Complaint, was a police detective employed by Defendant Elkton and the Elkton Police Department. Defendant Saulsbury was acting under the color of state law and within the scope of his employment at all times herein.

## FACTS COMMON TO ALL COUNTS

11)     On or about April 5, 2019, at approximately 5:50 p.m., several police officers approached Plaintiffs' home. These officers included Defendant Devine, Defendant Lasassa, and Defendant Saulsbury (the "**Individual Defendants**").

12)     Earlier that day, officers from the Elkton Police Department had arrested Michael Hindman. Michael Hindman was married to Sara Brown, Plaintiff Heather's daughter.

13)     After the arrest, the Individual Defendants decided to travel to Plaintiffs' residence, allegedly to inform Plaintiff Heather's daughter that her husband had been arrested and deliver Mr. Hindman's personal belongings to her.

14)     When they arrived at Plaintiffs' property, the Individual Defendants unlatched the front gate of Plaintiffs' yard and proceeded to enter, despite the clearly visible "Beware of Guard Dog" sign that warned against trespassing.

15)     Plaintiffs' home has a chain link fence surrounding the front yard, with a gate. On the gate is a clearly visible "Beware of Guard Dog" sign. The Individual Defendants observed the warning sign but still proceeded to enter the front yard and approach Plaintiffs' residence.

16)     Plaintiff James then exited his home into his front yard with his dogs, including Bella, unaware that the Individual Defendants had trespassed on his property and were present in his front yard.

17)     Upon seeing that the Individual Defendants had trespassed on Plaintiffs' property and entered the yard, the dogs began to bark.

18)     Two of the three Individual Defendants, Defendant Lasassa and Defendant Saulsbury, then exited Plaintiffs' yard. The third Individual Defendant, Defendant Devine, remained where he had trespassed into Plaintiffs' yard.

19) Plaintiff James told the dogs to "come."

20) Immediately after Plaintiff James gave that command, Defendant Devine drew his firearm and discharged his weapon at the dogs, striking Bella in the head.

21) At the time of the shooting, Bella was approximately 10 feet away from the nearest officer.

22) Bella died as a result of the shooting.

23) At the time that Defendant Devine shot Bella, Bella did not pose any threat to Defendant Devine, Defendant Lasassa, Defendant Saulsbury, or to any other person. Bella was lawfully owned and lawfully present on the property at the time.

24) Bella had not bitten or otherwise injured Defendant Devine, Defendant Lasassa, Defendant Saulsbury, or any other officer prior to the shooting.

25) Defendant Devine chose to shoot Bella rather than to use any other less lethal implement available to him, including, but not limited to, his voice, hands, feet, baton, mace or simply leaving Plaintiffs' yard if he felt threatened despite there being no cause for any alarm.

26) Defendant Devine had the opportunity to leave the area, as Defendant Lasassa and Defendant Saulsbury had, but refused to do so. Instead, Defendant Devine remained on the Plaintiffs' property and shot and killed Bella.

27) Defendant Devine had no legal right or justification to be present on the Plaintiffs' property at the time of the shooting and was trespassing on the Plaintiffs' property in violation of the Plaintiffs' constitutional rights.

28) Despite the Individual Defendants' claim that they had allegedly traveled to Plaintiffs' property to inform Plaintiff Heather's daughter that her husband had been arrested and to deliver to Plaintiff Heather's daughter personal belongings that were taken from Mr. Hindman

after his arrest, the Individual Defendants did not bring any of Mr. Hindman's personal belongings with them when they trespassed on Plaintiffs' property.

29)     As a result of Defendant Devine's choice to shoot and kill Bella despite there being no justification to do so, the Plaintiffs have suffered, and continue to suffer, mental anguish and emotional pain and suffering.

30)     Defendant Devine's unjustified and unwarranted shooting and killing of Bella took place nearly a year to the day after Bella had been shot and severely injured by Cecil County deputy sheriffs. At that time, Cecil County deputy sheriffs trespassed onto Plaintiffs' property at approximately 1:44 a.m. on the morning of April 10, 2018 to attempt service of a warrant on an individual that was not a resident of Plaintiffs' home and was not present that morning.

31)     The deputy sheriffs' squad, which consisted of four Cecil County deputy sheriffs, approached Plaintiffs' home in the early hours of the morning when the lights in the home were off and the Plaintiffs and their teenage daughter were asleep in the home.

32)     The deputies approached Plaintiffs' home, observed the clearly visible "Beware of Guard Dog" sign that warned against trespassing, and then proceeded to enter the front yard and approach Plaintiffs' residence. One of the deputies, Deputy Robert Freyer, #0675 ("**Deputy Freyer**"), approached the front door of Plaintiffs' home while another deputy, Cpl. Thomas Groce, #0535 ("**Deputy Groce**"), waited in the front yard and two deputies, DFC Ryan Stewart, #0935 and DFC Steven Hood, #0932, moved around to the backyard of Plaintiffs' home.

33)     Deputy Freyer knocked on Plaintiffs' door. When there was no immediate response, Deputy Freyer knocked again. Plaintiffs and their daughter were awoken by the yelling and pounding on the front door.

34)     When Plaintiff Heather partially opened the front door and asked the deputies what was going on, Bella ran into the front yard and stood in a stationary position about four feet in front of Plaintiff Heather, barking at the deputies. Bella did not make any forward advances towards the deputies and remained crouched in front of Plaintiff Heather.

35)     Despite Bella standing in a stationary position and not making any forward advances at all, Deputy Groce aimed his firearm in the direction of Bella and Plaintiff Heather and fired twice. Deputy Groce's first shot missed Bella, while Deputy Groce's second shot struck Bella on her front leg. At some point during the confrontation, Deputy Freyer also discharged his taser at Bella.

36)     By this point, Plaintiff James and the Plaintiffs' teenage daughter had exited the residence and witnessed Deputy Groce shoot and severely injure Bella.

37)     Deputy Freyer and Deputy Groce then retreated from Plaintiffs' front yard. Deputy Groce attempted to exit by scaling the Plaintiffs' chain link metal fence, snagging and tearing his pants in the process.

38)     After the shooting, several officers from the Elkton Police Department and the Maryland State Police arrived at Plaintiffs' residence to investigate the incident.

39)     As a result of this shooting, Bella sustained serious injuries that required debridement and surgical repair of the entry and exit wounds and the torn muscles.

40)     Deputy Groce discharged his firearm, a lethal weapon, in the direction of Bella and Defendant Heather despite the fact that Bella did not pose any threat to the deputies or to any other person and was lawfully owned and lawfully present on the property at the time. Bella had not bitten or otherwise injured the deputies prior to the shooting.

41)     Defendant Devine was aware of the prior shooting of Bella by Deputy Groce when he shot Bella nearly a year to the day later on April 5, 2019.

42)    On or about September 9, 2019, Plaintiffs notified Defendant Elkton of their claim in compliance with the Local Government Tort Claims Act, Md. Code, Cts. & Jud. Proc. § 5-301 *et seq.* and the Maryland State Tort Claims Act, Md. Code, State Gov't § 12-101, *et seq.*

43)    At the time of the shooting, Defendant Elkton did not have adequate policies or procedures in place to avoid events such as Defendant Devine shooting Bella, or to train officers to deal with household pets like Bella.

44)    At all times relevant hereto, the Defendants acted without legal justification or excuse.

45)    At no time did Bella or the Plaintiffs cause or contribute to the damages.

46)    As a direct and proximate result of the aforesaid conduct, actions, and inactions of the Defendants, as well as those stated elsewhere herein, the Plaintiffs were caused to suffer and continues to suffer mental pain and suffering, including but not limited to, undue emotional distress, mental anguish, humiliation, embarrassment, loss of respect, loss of society, shame, and loss of enjoyment of life.

47)    As a direct and proximate result of the Defendants' unconstitutional acts, the Plaintiffs suffered extreme mental and emotional distress.

48)    As a further proximate result of Defendants' unconstitutional acts, the Plaintiffs incurred expenses.

49)    The Plaintiffs further allege that all of Bella's injuries, losses and damages were caused solely by the actions of the Defendants, as set forth above, without any negligence, want of due care, or provocation on the part of the Plaintiffs, either directly or indirectly.

50)    The unjustified shooting and killing of Bella, when neither the dog nor the family posed any threat to the officers, and the illegal entry onto the Plaintiffs' property are a direct result

of customs, policies, patterns and practices within Defendant Elkton that encourages officers to shoot family pets and disregard other legal requirements. This conduct shocks the conscience.

51)     Defendant Devine provided little or no warning prior to shooting a non-aggressive family dog doing what dogs, by nature, do.  Defendant Devine deliberately discharged his department issued weapon towards the family dog, with an actual intent to injure or kill the family dog.  At all times mentioned, the Defendants acted intentionally, with an evil and rancorous and improper motive, with ill will and actual malice, and with the deliberate purpose to injure the Plaintiffs, by shooting the family dog and illegally entering their property.

52)     The deprivation of constitutional rights alleged herein are federal constitutional rights, namely violations of the Fourth Amendment and Fourteenth Amendment of the United States Constitution, which guarantees that no person shall be deprived of liberty or property without due process of law and protects citizens against unreasonable search and seizures.

53)     The deprivation of constitutional rights alleged herein are also state constitutional rights, namely violations of Article 24 of the Maryland Declaration of Rights, which guarantees that no person shall be deprived of liberty or property without due process of law and protects citizens against unreasonable search and seizures.

54)     At all times relevant hereto, the Defendants acted under color of law and within the scope of their employment as Defendant Elkton police officers and/or detectives.

55)     All the allegations herein, however worded, are pleaded alternatively as acts of negligence, gross negligence, intent, and/or malice, as determined at trial by the jury in this matter.

### COUNT I — AGAINST DEFENDANT ELKTON AND DEFENDANT DEVINE
### Fourth Amendment — Unlawful Seizure of Property

56)     Every paragraph not falling under this Count is incorporated herein by reference.

57)     At all times relevant to this Complaint, the Plaintiffs had a clearly established right under the Fourth Amendment of the United States Constitution to be free from unreasonable seizure of personal property by law enforcement officers. These constitutional protections are applied to the states and their political subdivisions under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

58)     At all relevant times, Defendant Devine acted under color of law, within his capacity and authority as a Town of Elkton Police Officer.

59)     At all times relevant to this Complaint, the Plaintiffs had a possessory interest in their family dog, Bella, who was lawfully owned by the Plaintiffs and lawfully present on the Plaintiffs' property at the time of the shooting.

60)     Defendant Devine unlawfully seized Bella, the Plaintiffs' dog, when he shot and killed Bella without legal justification or excuse, thereby injuring the Plaintiffs by depriving them of their property, without due process of law.

61)     This permanent deprivation of Plaintiffs' property, in the form of Defendant Devine shooting and killing Bella, constituted an unreasonable seizure of personal property by a law enforcement officer, in violation of the Fourth Amendment of the United States Constitution.

62)     Plaintiffs did not consent to Defendant Devine's permanent deprivation of their personal property.

63)     Defendant Devine had no legal justification to permanently deprive Plaintiffs of their personal property.

64)     Defendant Devine's conduct constituted an utter disregard for the established and manifest Fourth Amendment rights of Plaintiffs, to the point that Plaintiffs were treated as if those rights did not exist, even though Defendant Devine knew, or should have known, of the existence

of those rights. In the alternative, Defendant Devine's conduct constituted a knowing and intentional violation of Plaintiffs' Fourth Amendment rights.

65)    As a direct and proximate result of Defendant Devine's unconstitutional conduct, Plaintiffs suffered injuries in the form of severe physical injury to their family pet which resulted in Bella's death, as well as humiliation, disgrace, and loss of dignity.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT II — AGAINST DEFENDANT ELKTON AND DEFENDANT DEVINE
### Fourteenth Amendment — Substantive Due Process

66)    Every paragraph not falling under this Count is incorporated herein by reference.

67)    At all times relevant to this Complaint, the Plaintiffs had a clearly established right under the Fourteenth Amendment of the United States Constitution to be free from the deprivation of their personal property by law enforcement officers.

68)    At all relevant times, Defendant Devine acted under color of law, within his capacity and authority as a Town of Elkton Police Officer.

69)    At all times relevant to this Complaint, the Plaintiffs had a possessory interest in their family dog, Bella, who was lawfully owned by the Plaintiffs and lawfully present on the Plaintiffs' property at the time of the shooting.

70)    Defendant Devine unlawfully seized Bella, the Plaintiffs' dog, when he shot and killed Bella without legal justification or excuse, thereby injuring the Plaintiffs by depriving them of their property, without due process of law.

71)     This permanent deprivation of Plaintiffs' property, in the form of Defendant Devine shooting and killing Bella, constituted an unreasonable seizure of personal property by a law enforcement officer, in violation of the Fourteenth Amendment of the United States Constitution.

72)     Plaintiffs did not consent to Defendant Devine's permanent deprivation of their personal property.

73)     Defendant Devine had no legal justification to permanently deprive Plaintiffs of their personal property.

74)     Defendant Devine's conduct constituted an utter disregard for the established and manifest Fourteenth Amendment rights of Plaintiffs, to the point that Plaintiffs were treated as if those rights did not exist, even though Defendant Devine knew, or should have known, of the existence of those rights. In the alternative, Defendant Devine's conduct constituted a knowing and intentional violation of Plaintiffs' Fourteenth Amendment rights.

75)     As a direct and proximate result of Defendant Devine's unconstitutional conduct, Plaintiffs suffered injuries in the form of severe physical injury to their family pet which resulted in Bella's death, as well as humiliation, disgrace, and loss of dignity.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT III — AGAINST DEFENDANT ELKTON AND DEFENDANT DEVINE
### Violation of Article 24 of the Md Declaration of Rights — Unlawful Seizure of Property

76)     Every paragraph not falling under this Count is incorporated herein by reference.

77)     At all times relevant to this Complaint, the Plaintiffs had a possessory interest in their family dog, Bella, who was lawfully owned by the Plaintiffs and lawfully present on the Plaintiffs' property at the time of the shooting.

78)     Defendant Devine unlawfully seized Bella, the Plaintiffs' dog, when he shot and killed Bella without legal justification or excuse, thereby injuring the Plaintiffs by depriving them of their property, without due process of law, in violation of Article 24 of the Maryland Declaration of Rights.

79)     This permanent deprivation of Plaintiffs' property, in the form of Defendant Devine shooting and killing Bella, constituted an unreasonable seizure of personal property by a law enforcement officer, in violation of the Fourth Amendment of the United States Constitution.

80)     Plaintiffs did not consent to Defendant Devine's permanent deprivation of their personal property.

81)     Defendant Devine had no legal justification to permanently deprive Plaintiffs of their personal property.

82)     As a direct and proximate result of Defendant Devine's unconstitutional conduct, Plaintiffs suffered injuries in the form of severe physical injury to their family pet which resulted in Bella's death, as well as humiliation, disgrace, and loss of dignity.

83)     At all relevant times, Defendant Devine acted under color of law, within his capacity and authority as a Town of Elkton Police Officer.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT IV — AGAINST DEFENDANT ELKTON AND DEFENDANT DEVINE
### Conversion

84)     Every paragraph not falling under this Count is incorporated herein by reference.

85)     Defendant Devine maliciously and with intent to seriously harm or kill, shot Plaintiffs' beloved dog Bella.

86)     Defendant Devine had no legal justification to shoot and kill Bella.

87)     At all times relevant hereto, Defendant Devine acted without legal justification or excuse.

88)     At the time, Defendant Devine purportedly sought to deliver personal belongings to Plaintiffs' daughter that were previously seized from an arrested individual and was acting within the scope of his employment with Defendant Elkton, acting under the color and pretense of law and under the color of statutes, customs, and usages of Defendant Elkton.

89)     At all times relevant to this Complaint, the Plaintiffs had a possessory interest in their family dog, Bella, who was lawfully owned by the Plaintiffs and lawfully present on the Plaintiffs' property at the time of the shooting.

90)     Defendant Devine acted deliberately and with ill will, improper motive, and/or actual malice to interfere with Bella, Plaintiffs' family dog.

91)     In the alternative, Defendant Devine acted with negligence and/or gross negligence in violation of lawful duties owed the Plaintiffs when he interfered with Bella, Plaintiffs' family dog.

92)     As a result of Defendant Devine's conduct, Plaintiffs were permanently deprived of Bella, their beloved family dog.

93)     As a direct and proximate result of Defendant Devine's conduct, Plaintiffs suffered injuries in the form of severe physical injury to their family pet which resulted in Bella's death, as well as humiliation, disgrace, and loss of dignity.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT V — AGAINST ALL DEFENDANTS
### Fourth Amendment — Unlawful Trespass

94)     Every paragraph not falling under this Count is incorporated herein by reference.

95)     At all times relevant to this Complaint, the Plaintiffs had a clearly established right under the Fourth Amendment of the United States Constitution to be free from unreasonable trespass on private property by law enforcement officers. These constitutional protections are applied to the states and their political subdivisions under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

96)     At all relevant times, the Individual Defendants acted under color of law, within their capacity and authority as a Town of Elkton Police Officer and/or Detective.

97)     At all times relevant to this Complaint, the Plaintiffs had a reasonable expectation of privacy on their private property, including, but not limited to, the front yard of Plaintiffs' home. The boundary of Plaintiffs' front yard and private property were clearly delineated by the chain link fence surrounding the yard, and the visible "Beware of Guard Dog" sign clearly communicated Plaintiffs' reasonable expectation of privacy in the area surrounded by the fence.

98)     However, despite the clearly visible "Beware of Guard Dog" and the chain link fence delineating the boundaries of Plaintiffs' private property, the Individual Defendants intentionally opened the gate to Plaintiffs' front yard and trespassed on Plaintiffs' private property.

99)     This violation of Plaintiffs' right to their private property and reasonable expectation of privacy constituted an unlawful trespass by a law enforcement officer, in violation of the Fourth Amendment of the United States Constitution.

100)    Plaintiffs did not consent to the Individual Defendants' trespass on their private property.

101) The Individual Defendants had no legal justification to trespass on Plaintiffs' private property.

102) The Individual Defendants' conduct constituted an utter disregard for the established and manifest Fourth Amendment rights of Plaintiffs, to the point that Plaintiffs were treated as if those rights did not exist, even though the Individual Defendants knew, or should have known, of the existence of those rights. In the alternative, the Individual Defendants' conduct constituted a knowing and intentional violation of Plaintiffs' Fourth Amendment rights.

103) As a direct and proximate result of Defendant Devine's unconstitutional conduct, Plaintiffs suffered injuries in the form of severe physical injury to their family pet which resulted in Bella's death, as well as humiliation, disgrace, and loss of dignity.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT VI — ALL DEFENDANTS
### Violation of Article 24 of the Maryland Declaration of Rights — Illegal Entry of Property

104) Every paragraph not falling under this Count is incorporated herein by reference.

105) Defendant Devine, Defendant Lasassa, and Defendant Saulsbury unlawfully entered onto Plaintiffs' property, without a search warrant, exigent circumstances, or other legal justification in violation of Plaintiffs' rights under Article 24 of the Maryland Declaration of Rights to be free from unlawful entry and seizures.

106) As a direct and proximate result of Defendant Devine, Defendant Lasassa, and Defendant Saulsbury's actions, Plaintiffs suffered injuries in the form of fear and apprehension, humiliation, disgrace, and loss of dignity.

107)    At the time of the unlawful entry, Defendant Devine, Defendant Lasassa, and Defendant Saulsbury purportedly sought to deliver personal belongings to Plaintiffs' daughter, which had been seized from the previous arrest of Plaintiff's daughter's husband. Despite claiming that their intention was to return this property, none of the Individual Defendants had Plaintiff's daughter's husband's belongings with them when they trespassed on Plaintiffs' property.

108)    At the time of the unlawful entry, Defendant Devine, Defendant Lasassa, and Defendant Saulsbury were acting within the scope of their employment with Defendant Elkton, and Defendant Elkton is vicariously liable for the constitutional violation.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT VII — ALL DEFENDANTS
### Trespass to Property

109)    Every paragraph not falling under this Count is incorporated herein by reference.

110)    Defendant Devine, Defendant Lasassa, and Defendant Saulsbury unlawfully entered onto Plaintiffs' property, without a search warrant, exigent circumstances, or other legal justification in violation of Plaintiffs' rights.

111)    As a direct and proximate result of Defendant Devine, Defendant Lasassa, and Defendant Saulsbury's actions, Plaintiffs suffered injuries in the form of fear and apprehension, humiliation, disgrace, and loss of dignity.

112)    The Individual Defendants acted deliberately and with ill will, improper motive, and/or actual malice to interfere with Plaintiffs' property rights and trespass on Plaintiffs' property.

113)    In the alternative, the Individual Defendants acted with negligence and/or gross negligence in violation of lawful duties owed the Plaintiffs when they interfered with Plaintiffs' property rights and trespassed on Plaintiffs' property.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT VIII — ALL DEFENDANTS
### Intentional Infliction of Emotional Distress

114)    Every paragraph not falling under this Count is incorporated herein by reference.

115)    Defendant Devine, Defendant Lasassa, and Defendant Saulsbury unlawfully entered onto Plaintiffs' property, without a search warrant, exigent circumstances, or other legal justification.

116)    Defendant Devine shot and killed Bella, the Plaintiffs' beloved family pet, at the Plaintiffs' home, with no legal justification.

117)    None of the Individual Defendants made an attempt to assist Plaintiffs with Bella and did nothing to lessen the gravity of their unconscionable, unjustified, and heinous actions.

118)    Defendant Elkton condoned the shootings and killing of the Plaintiffs' family pet by failing to control and monitor the individual Defendants and failing to thoroughly investigate and appropriately punish Defendant Devine for shooting and killing Bella, or Defendants Lasassa and Saulsbury for assisting Defendant Devine in shooting and killing Bella.

119)     Plaintiffs have suffered severe emotional distress, as a direct result of witnessing the aftermath of the shooting and killing of Bella, their beloved family pet.

120)    The Defendants' conduct was extreme and outrageous, and beyond the bounds of decency in a civilized society.

121)   As a direct and proximate result of the Defendants' conduct, Plaintiffs suffered substantial physical, psychological, and emotional damages.

122)   At all times relevant hereto, the Defendants acted without legal justification or excuse.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

## COUNT IX — ALL DEFENDANTS
### Negligence

123)   Every paragraph not falling under this Count is incorporated herein by reference.

124)   The Defendants' actions, as set forth in prior paragraphs of this Complaint, violated Plaintiffs' rights as alleged herein.

125)   In the event that the fact finder determines that the Individual Defendants did not act maliciously, but they were negligent in the performance of their duties, thereby injuring the Plaintiffs, then Defendant Elkton is vicariously liable for those negligent acts.

126)   The Individual Defendants owed the Plaintiffs a duty to use reasonable care when entering their property in a non-hostile encounter and in their treatment of Plaintiffs' dog as set forth above, so as not to violate Plaintiffs' rights by subjecting them to an unreasonable seizure of their dog and search of their property.

127)   The Individual Defendants breached that duty of care by unlawfully seizing Plaintiffs' dog and killing her as alleged above.

128)    As a direct and proximate cause of that breach, Plaintiffs suffered actual emotional injuries, financial damages, and the death of their family dog, Bella.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

**COUNT X — AGAINST THE INDIVIDUAL DEFENDANTS**
**Gross Negligence**

129)    Every paragraph not falling under this Count is incorporated herein by reference.

130)    The Individual Defendants acted with a wanton and reckless disregard for the Plaintiffs' civil rights.

131)    The Individual Defendants intentionally failed to adequately perform their duties, violating the Plaintiffs' rights and subjecting them to the unreasonable seizure and serious injury of their dog and search of their property.

132)    The Individual Defendants' conduct demonstrated a thoughtless disregard of the consequences of their actions and showed no effort to avoid these consequences.

133)    The Individual Defendants' conduct demonstrated an indifference to Plaintiffs' civil rights to the point where they acted as if such rights did not exist.

134)    The Individual Defendants intentionally inflicted injuries on Plaintiff through their wrongful conduct.

135)    As a direct and proximate cause of that breach, Plaintiffs suffered actual emotional injuries, financial damages, and the death of their family dog, Bella.

WHEREFORE, Plaintiffs respectfully request compensatory damages in an amount to be determined at trial, but in excess of $75,000, as well as any available punitive damages, in addition to costs and attorneys' fees.

**JURY DEMAND**

Plaintiffs demand a jury trial as to all claims so triable.

Respectfully submitted,

HANSEL LAW, PC

_____/s/ *Cary Hansel*_____
Cary J. Hansel (Bar No. 14722)
2514 North Charles Street
Baltimore, MD 21218
Tel: (301) 461-1040
Fax: (443) 451-8606
cary@hansellaw.com
*Counsel for Plaintiffs*