**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JAMES MYERS, et al.                *

       Plaintiffs,             *

v.                             *            No. BPG-22-803

TOWN OF ELKTON, MARYLAND, et al.  *

       Defendants          *

       *      *      *      *      *      *      *      *      *      *      *

## <u>MEMORANDUM OPINION</u>

Currently pending before the court are Defendants Anthony M. Devine, Dennis J. Lasassa, and Thomas F. Saulsbury's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant Officers' Motion") (ECF No. 31), plaintiffs' Response in Opposition to Defendants Anthony M. Devine, Dennis J. Lasassa, and Thomas F. Saulsbury's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Plaintiffs' Response to defendant Officers") (ECF No. 42), and defendant Officers' Reply in Further Support of Their Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant Officers' Reply") (ECF No. 49).  Also pending before the court are Defendant Town of Elkton, Maryland's Motion to Dismiss or, in the Alternative for Summary Judgment ("Defendant Town's Motion") (ECF No. 32), plaintiffs' Response in Opposition to Defendant Town of Elkton's Motion to Dismiss or For Summary Judgment ("Plaintiffs' Response to Defendant Town") (ECF No. 36), and defendant Town's Reply Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment ("Defendant Town's Reply") (ECF No. 50).  Finally, before the court are plaintiffs' Motion to Substitute Party ("plaintiffs' Motion") (ECF No. 33), defendant Officers' Opposition to Plaintiffs' Motion to Substitute Party ("Defendant Officers' Response") (ECF No. 45), defendant

Town of Elkton's Opposition to Motion to Substitute Party ("Defendant Town's Opposition") (ECF No. 48), and Plaintiffs' Reply to Defendants Devine, Lasassa, and Saulsbury's Opposition to Plaintiffs' Motion to Substitute Party ("Plaintiffs' Reply") (ECF No. 51).  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, plaintiffs' Motion (ECF No. 33) is granted, defendant Officers' Motion (ECF No. 31) is granted in part and denied in part, and defendant Town's Motion (ECF No. 32) is granted in part and denied in part.  The court declines to transform either defendant Officers' or defendant Town's Motion into one for summary judgment.

## I.   **BACKGROUND**

When ruling on a Motion to Dismiss, the court must "accept[ ] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Plaintiffs allege that on April 5, 2019, officers from the Elkton Police Department arrested Michael Hindman, husband of Sara Brown, plaintiff Heather Myers' daughter.  (Id. ¶ 12).  Later that day, at approximately 5:50 p.m., Officers Devine, Lasassa, and Saulsbury (collectively "defendant Officers") arrived at plaintiffs' home, with the purported purpose of informing Ms. Brown that her husband had been arrested and delivering his personal property.  (Id. ¶¶ 11, 13).  Defendant Officers did not have any of Mr. Hindman's personal property with them.  (Id. ¶ 28).  Defendant Officers approached plaintiffs' home, unlatched the front gate, and entered their yard, despite the presence of a "Beware of Guard Dog" sign posted on the fence.  (ECF No. 1 ¶¶ 14, 15).

Plaintiff James Myers, unaware that the Officers had entered the yard, exited his home, joined by multiple dogs, including Bella.  (Id. ¶ 16).  When the dogs noticed that defendant Officers were in the yard, they began to bark, at which point Officers Lasassa and Saulsbury exited

plaintiffs' yard.  (Id. ¶¶ 17, 18).  Mr. Myers attempted to recall his dogs by telling them to "come." (Id. ¶ 19).  Immediately thereafter, however, Officer Devine discharged his weapon, shooting and killing Bella.  (Id. ¶¶ 19, 20, 22).  At the time Officer Devine shot Bella, plaintiffs allege that she was approximately 10 feet away from the nearest officer, had not bitten or otherwise injured any of defendant Officers, and posed no threat to any of defendant Officers.  (Id. ¶¶ 21, 23, 24).

On April 4, 2022, plaintiffs filed suit in this court against Officers Anthony M. Devine, Detective Thomas F. Saulsbury, and Detective Dennis J. Lasassa, in both their individual and official capacities as Town of Elkton Police Officers and the Town of Elkton, Maryland.  (Id.) Plaintiffs assert 10 counts: (I) Against Officer Devine and defendant Town – Unlawful Seizure of Property in violation of the Fourth Amendment; (II) Against Officer Devine and defendant Town – Unlawful Deprivation of Private Property by Law Enforcement Officers in violation of plaintiffs' Fourteenth Amendment Substantive Due Process right; (III) Against Officer Devine and defendant Town – Unlawful Seizure of Property in violation of Article 24 of the Maryland Declaration of Rights; (IV) Against Officer Devine and defendant Town – Conversion; (V) Against defendant Officers and defendant Town – Unlawful trespass in violation of the Fourth Amendment; (VI) Against defendant Officers and defendant Town – Illegal Entry of Property in violation of Article 24 of the Maryland Declaration of Rights; (VII) Against defendant Officers and defendant Town – Trespass to Property; (VIII) Against defendant Officers and defendant Town – Intentional Infliction of Emotional Distress; (IX) Against defendant Officers and defendant Town – Negligence; and, (X) Against defendant Officers – Gross Negligence.  (ECF No. 1).

## II.   DISCUSSION

Defendant Officers move to dismiss all counts of plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  (ECF No. 31).  Alternatively,

defendant Officers move for summary judgment on all counts pursuant to Rule 56.  (ECF No. 31-1 at 1, 9-10).  Defendant Town moves to dismiss Counts I, II, IV, V, VII, VIII, and IX of plaintiffs' Complaint pursuant to Rule 12(b)(6), for failure to state a claim on which relief can be granted. (ECF No. 32).  With respect to Counts III and VI, defendant Town moves for summary judgment. (Id.)  Defendant Officers argue, and defendant Town adopts the argument, that plaintiff James Myers should be removed as a plaintiff and the claims brought by him dismissed because he was deceased at the time the case was filed.  (ECF Nos. 31-1 at 10-11, 32-1 at 1 n.1).  In response, plaintiffs seek to substitute plaintiff James Myers with his Personal Representative.  (ECF No. 33).

### A.    Plaintiffs' Motion to Substitute Party

Plaintiffs move to substitute James Myers with Heather Myers, as Personal Representative of the Estate of James Myers, Deceased, stating that because Mrs. Myers was also a plaintiff in her individual capacity at the time plaintiffs filed their Complaint, the claims are not extinguished and the substitution should be permitted.  (ECF No. 33 at 1-2).  Defendants contend that the claims brought by plaintiff James Myers must be dismissed because Mr. Myers was deceased at the time plaintiffs' Complaint was filed, and thus he lacked Article III standing to bring the suit.  (ECF Nos. 31 at 2, 10-11, 32 at 1 n.1).

The Federal Rules of Civil Procedure contemplate the possibility that a plaintiff might die in the course of the proceedings.  Rule 25 "governs substitution upon the death of a party," however, "the rule applies only when a plaintiff dies after he filed the complaint."  House v. Mitra QSR KNE LLC, 796 Fed. App'x 783, 790 (4th Cir. 2019) (internal quotation omitted).  Mr. Myers died 92 days before the Complaint was filed.  (ECF No. 33 ¶ 1).  As a result, Rule 25 does not apply in this case.  Rule 17, on the other hand, provides that: "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable

time has been allowed for the real party in interest to ratify, join, or be substituted into the action." The Fourth Circuit explained in <u>House</u> that, "[w]hat Rule 17 requires, in other words, is 'an action' into which a new plaintiff may be substituted." 796 Fed. App'x at 790. In that case, the deceased was the only plaintiff to the action, and thus the failure of plaintiff's estate or personal representative to be named in his place at the time the case was initially filed rendered the case a nullity, such that there was no underlying "action" into which the deceased plaintiff's representative could be substituted. <u>Id.</u> The Court concluded that, the suit, "filed in [deceased plaintiff's] name only after [deceased plaintiff] had passed away, is a nullity that cannot be cured by substitution under Rule 17," because that defect is jurisdictional. <u>Id.</u> at 791.

Defendants contend that because Mr. Myers was deceased when the Complaint was filed, he lacked Article III standing, a "jurisdictional threshold that is determined at the time the complaint is filed." (ECF No. 45 at 2). Accordingly, defendants assert that the claims brought on Mr. Myers' behalf must be dismissed and he cannot, at this stage, be substituted with another party. Plaintiffs respond that dismissal would be appropriate if Mr. Myers were the only plaintiff. (ECF No. 51 at 2-3). Because, however, Mrs. Myers in her individual capacity is also a plaintiff in this case, plaintiffs contend that the case is not a nullity in Mr. Myers' absence, given that there was at least one suitable plaintiff at the time the Complaint was filed. (<u>Id.</u>) Although there is no question that Mr. Myers is not a suitable plaintiff and cannot continue as a plaintiff in this case, Heather Myers remains a proper plaintiff. Therefore, this case is not a "nullity," as in <u>House</u>, and, even if plaintiffs' Motion was denied, the case would nonetheless proceed on Heather Myers' claims. As a result, Heather Myers, Personal Representative of the Estate of James Myers may be substituted or joined because, as Rule 17 states, the real party in interest must be allowed "a reasonable time" to "join, or be substituted into the action." Fed. R. Civ. Proc. 17(a)(3). Accordingly, the court will

grant plaintiffs' Motion to Substitute Party (ECF No. 33) and allow plaintiffs to substitute Heather Myers, Personal Representative of the Estate of James Myers, for James Myers.

B. **Defendant Officers' Motion to Dismiss**

Defendant Officers collectively move to dismiss all counts of plaintiffs' Complaint.[1]  (ECF No. 31-1).  Officers Lasassa and Saulsbury contend that plaintiffs have failed to plead sufficient factual allegations to plausibly state any of the claims set forth in Counts V through X against them.  (ECF No. 31-1 at 11).  Officer Devine argues that Counts I, II, III, V, VI, VII, and X should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  (Id. at 2)  Officer Devine contends that even if plaintiffs have stated a plausible claim with respect to any count against him, he is protected by qualified immunity, public official immunity, and statutory immunity.  (Id. at 2-3).

Rule 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. Edwards, 178 F.3d at 243.  When ruling on such a motion, the court must "accept[ ] all well-pleaded allegations in the plaintiff's complaint as true" and "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."  Id. at 244.  Nonetheless, "[t]he mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)."  Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Rather, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Ashcroft, 556

---

[1] Because Officers Devine, Lasassa, and Saulsbury filed a single, joint Motion to Dismiss, the court refers generally to the Motion as defendant Officers' Motion.  (ECF No. 31)  Where appropriate, however, the court refers to the specific officer(s) making an argument, rather than the collective group of "defendant Officers."

U.S. at 678 (internal citation and quotation marks omitted).  A plaintiff satisfies this standard not by forecasting evidence sufficient to prove the elements of the claim, but by alleging sufficient facts to establish those elements.  Walters, 684 F.3d at 439.  Accordingly, "while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'"  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### i.   Counts I and III – Against Officer Devine

Counts I and III of plaintiffs' Complaint allege unlawful seizure in violation of the Fourth Amendment, and unlawful seizure in violation of Article 24 of the Maryland Declaration of Rights, respectively, against Officer Devine.[2]  Officer Devine argues that plaintiffs fail to state a plausible claim for unlawful seizure pursuant the Fourth Amendment of the United States Constitution or Article 24 of the Maryland Declaration of Rights.  (ECF No. 31-1 at 12).  Specifically, Officer Devine contends that he acted reasonably when he shot plaintiffs' dog.  (Id.)  Further, Officer Devine argues that he faced an immediate threat of harm at the hands of plaintiffs' dog, which was "unleashed, uncontrolled . . . charged[,] growled, and attempted to bite [Officer Devine]."  (Id. at 13-14).  The Fourth Circuit has recognized that an individual's "privately owned dogs [are] 'effects' subject to the protections of the Fourth Amendment."  Altman v. City of High Point, N.C., 330 F.3d 194, 203 (4th Cir. 2003).  The seizure of those effects, then, must be reasonable.  Id.  "To assess the reasonableness of [a government seizure under the Fourth Amendment], [w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"  Ray v.

---

[2] "Article 24 of the Maryland Declaration of Rights is interpreted in pari materia with the Fourth Amendment." Littleton v. Swonger, 502 Fed. App'x 271, 274 (4th Cir. 2019); Dent v. Montgomery Cnty. Police Dep't., 745 F. Supp. 2d 648, 661 (D. Md. 2010).

Roane, 948 F.3d 222, 227 (4th Cir. 2020) (quoting United States v. Jacobsen, 466 U.S. 109, 125 (1984)).

Courts have held that "the private interests in dogs—and family pets especially—are highly significant[.]"  Ray, 948 F.3d at 227.  There is also, however, a strong interest on the part of the government, to protect the public and police officers from dangerous dogs.  Id.  The court, in weighing these interests, looks at the information known to the officer at the time of the shooting to determine whether his actions were objectively unreasonable.  See id.  Altman, 330 F.3d at 205.  There are significant differences between the parties' recollection of the events preceding the shooting of Bella.  For example, Officer Devine contends that he was trapped in the fenced-in yard, the dog was barking and charging towards him, and that Mr. Myers made no attempt to stop or restrain the dog.  (ECF No. 31-1 at 13).  Plaintiffs, on the other hand, allege that Mr. Myers called for the dogs to "come," immediately after which Officer Devine shot and killed Bella.  (ECF No. 1 ¶ 19).  Officer Devine states that the dog reached him before he shot, and bit at his inner thigh, leaving mud on his pants, (ECF No. 31-1 at 6), while plaintiffs claim that Bella was 10 feet away from Officer Devine at the time he discharged his weapon, and had not bitten or attempted to bite Officer Devine.  (ECF No. 1 ¶ 23).  Further, plaintiffs assert that defendant Officers knew dogs were present at the home, given the posted signs, rendering Officer Devine's reaction to the appearance of the dogs unreasonable.  (Id. ¶¶ 14-15).  Drawing all reasonable factual inferences from the Complaint in plaintiffs' favor, plaintiffs state a plausible claim that Officer Devine acted unreasonably in shooting Bella, and, therefore, defendant Officers' Motion is denied as to Counts I and III.

ii.    <u>**Count II – Against Officer Devine**</u>

Count II of plaintiffs' Complaint alleges a violation of plaintiffs' Fourteenth Amendment substantive due process right.  (ECF No. 1).  Officer Devine argues that plaintiffs' Complaint fails to specify whether their substantive due process claim should be considered a § 1983 claim or a claim made pursuant to the Fourth Amendment.  (ECF No. 31-1 at 15).  Officer Devine further contends that "'the more specific provision rule' requires that plaintiff[s'] seizure claim be evaluated under the Fourth Amendment and not the substantive due process clause of the Fourteenth Amendment."  (<u>Id.</u>)  Plaintiffs' response does not appear to counter Officer Devine's conclusion that Count II should be evaluated as a Fourth Amendment claim.  (ECF No. 42 at 16). Instead, plaintiffs argue that while Officer Devine "was trespassing on [p]laintiffs' property, he summarily deprived them of [their dog], their legal property under law," therefore violating their right to substantive due process.  (<u>Id.</u>)  "All claims that law enforcement officers have used excessive force" in the course of a seizure "should be analyzed under the Fourth Amendment and its 'reasonableness' standard rather than under a 'substantive due process' approach."  <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).  In fact, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998) (quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)).  Plaintiffs' substantive due process claim is based upon an alleged right to be free from the deprivation of their personal property, which constitutes a seizure.  (ECF No. 1. ⁋⁋ 67, 70 (alleging that Bella was "unlawfully seized")).  As a result, any liability for Officer Devine's actions turns on an application of the reasonableness standard

governing seizures under the Fourth Amendment, not substantive due process.  Accordingly, Defendant Officers' Motion is granted as to Count II.

### iii.    <u>Counts V through VII – Against Officer Lasassa</u>

Counts V, VI, and VII of plaintiffs' Complaint allege Fourth Amendment unlawful trespass, illegal entry of property in violation of Article 24 of the Maryland Declaration of Rights, and common law trespass, respectively.  Officer Lasassa moves to dismiss these counts, stating that plaintiffs fail to make a plausible claim against him.  (ECF No. 31-1 at 2, 11).  Plaintiffs' Complaint states that Officer Lasassa (1) entered plaintiffs' yard, (2) without Mr. Hindman's personal belongings, and (3) exited the yard when the dogs began barking.  (ECF No. 1 ¶¶ 15, 17, 18).  In plaintiffs' Opposition to defendant Officers' Motion, however, plaintiffs state that they no longer "intend to pursue a trespass claim against Officer Lasassa as he apparently did not enter the fenced area." (ECF No. 42 at 19).  Because plaintiffs concede that the facts do not state a plausible claim for relief, with regard to plaintiffs' trespass claims against Officer Lasassa, the court will grant defendant Officers' Motion on Counts V through VII as to Officer Lasassa only.

### iv.    <u>Counts V, VI, and VII – Against Officers Devine and Saulsbury</u>

Plaintiffs assert Counts V, VI, and VII against Officers Devine and Saulsbury.  Officers Devine and Saulsbury move for dismissal of these claims on the grounds that they were not trespassing, but acting in their official capacity to inform Ms. Brown of the arrest of her husband, and were therefore entitled to be on the premises.  (ECF No. 31-1 at 16).  It is well-settled that simply entering onto another's property to approach the door and knock does not constitute a trespass, notwithstanding that the individual entering the property is a member of law enforcement. <u>Florida v. Jardines</u>, 569 U.S. 1, 8 (2013) (recognizing that "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private

citizen might do'" without violating the Fourth Amendment).  For Fourth Amendment purposes, "police officers on legitimate business, by merely approaching a dwelling to ask questions, do not commit an unlawful search or seizure of property or an unlawful seizure of a person."  Jones v. State, 962 A.2d 393, 399 (Md. 2008).  Under Maryland law, "[a] trespass is an intentional or negligent intrusion upon or to the possessory interest in property of another."  Ford v. Baltimore City Sheriff's Office, 814 A.2d 127, 139 (Md. Ct. Spec. App. 2002).  Officers Devine and Saulsbury argue that they were authorized to go onto the premises, in the same way that any person may enter the property of another, approach the home, and knock without committing a trespass. (ECF No. 31-1 at 16  (citing Florida v. Jardines, 569 U.S. 1, 8 (2013)).  Plaintiffs counter that Officers Devine and Saulsbury committed a trespass by entering onto their land without a legitimate reason, and Officer Devine's conduct, in particular, deprived them of their possessory interest.  (ECF No. 42 at 18-19).

Drawing all reasonable factual inferences in plaintiffs' favor, plaintiffs articulate facts sufficient to state a claim against Officers Devine and Saulsbury.  Officers Devine and Saulsbury entered what was clearly delineated private, fenced property.   (ECF No. 1 ¶¶ 97-98).  The Fourth Circuit has held that while there is "no constitutional basis for excluding police officers from th[e] list of potential visitors" to one's home, "the homeowner can reasonably expect all such visits to cease when he has manifested his intent to exclude strangers by sealing the property around his home and posting 'No Trespassing' signs."  Edens v. Kennedy, 113 Fed. App'x 870, 875 (4th Cir. 2004).  Plaintiffs' Complaint sufficiently alleges that plaintiffs manifested their intent to prevent any visitors, including police, from entering their property by erecting a fence and posting signs warning of the presence of guard dogs. Plaintiffs further assert that while Officers Devine and Saulsbury purport to have acted in their official capacities, visits to return personal property were

not common practice, and the stated reasons for the visit—to notify Ms. Brown of her husband's arrest and extradition and to return Mr. Hindman's property—were pretextual, as evidenced by the officers' failure to bring the personal property.  (ECF No. 42 at 18-19).  Thus, plaintiffs' Complaint states a plausible claim that Officers Devine and Saulsbury not only entered onto property on which plaintiffs maintained an expectation of privacy, but also acted to deprive plaintiffs of their possessory interest in that property.  Accordingly, with respect to Officers Devine and Saulsbury, defendant Officers' Motion is denied as to Counts V, VI, and VII.

> ### v.   <u>Counts VIII through X – Against Officers Lasassa and Saulsbury</u>

Counts VIII, IX, and X state claims for intentional infliction of emotional distress, negligence and gross negligence, respectively.  Officers Lasassa and Saulsbury contend that plaintiffs have failed to plead sufficient factual allegations to state a plausible claim against them.  With respect to plaintiffs' intentional infliction of emotional distress claim, set forth in Count VIII, plaintiffs must show that Officers Lasassa and Saulsbury engaged in intentional or reckless conduct that was extreme or outrageous and resulted in severe emotional distress.  <u>See Brengle v. Greenbelt Homes, Inc.</u>, 804 F. Supp. 2d 447, 452 (D. Md. 2011).  Plaintiffs' Complaint alleges that Officers Lasassa and Saulsbury made no "attempt to assist Plaintiffs with Bella and did nothing to lessen the gravity of their unconscionable, unjustified, and heinous actions."  (ECF No. 1 ⁋ 117).  Plaintiffs' Complaint, however, is devoid of allegations stating any "extreme and outrageous" conduct on the part of Officers Lasassa and Saulsbury.  "[E]xtreme and outrageous conduct is defined as conduct that 'is so outrageous, and so extreme in degree, as to go beyond all possible bounds of decency, and to be granted as atrocious, and utterly intolerable in civilized society.'"  <u>Cantrel v. United States</u>, No. JKB-12-2607, 2014 WL 3943108, *9 (D. Md. Aug. 12, 2014).  Plaintiffs acknowledge that Officer Lasassa did not pass onto plaintiffs' property.  While

Officer Saulsbury did go on to plaintiffs' property, he exited the yard before plaintiffs' dog was killed.  The mere assertion that Officers Lasassa and Saulsbury's acts were heinous, without more, is insufficient to state a plausible claim for relief in Count VIII against Officers Lasassa and Saulsbury.

With respect to plaintiffs' negligence claim, set forth in Count IX, Officers Lasassa and Saulsbury argue that plaintiffs' Complaint lacks factual allegations sufficient to state a plausible claim for relief.  Under Maryland law, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of duty.'"  100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co., 60, A.3d 1, 10 (Md. 2013) (internal citation omitted).  Plaintiffs allege that defendants "owed [p]laintiffs a duty to use reasonable care when entering their property in a non-hostile encounter and in their treatment of [p]laintiffs' dog," and "breached that duty of care by unlawfully seizing [p]laintiffs' dog and killing her."  (ECF No. 1 ¶ 126).  Officers Lasassa and Saulsbury were not responsible for the death of plaintiffs' dog.  To the contrary, Officer Lasassa never entered the yard where the dogs were present and Officer Saulsbury exited the yard only moments after entering it, when the dog came into the yard and began barking.  Plaintiffs failed to support this claim with sufficient factual allegations in the Complaint, and, therefore, do not state a plausible claim for relief in Count IX against Officers Lasassa and Saulsbury.

Count X asserts a claim of gross negligence against Officers Lasassa and Saulsbury. "Gross Negligence is 'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them."  Wallace v. Johnson, CCB-

17-3718, 2022 WL 971187, at *11 (D. Md. Mar. 31, 2022).  For the same reasons that plaintiffs' negligence claim fails, plaintiffs' gross negligence claim must fail.  Plaintiffs' Complaint merely lists the elements of a claim for gross negligence and alleges that Officers Saulsbury and Lasassa acted intentionally to deprive plaintiffs of their dog.  "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement' " will not suffice. Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 555, 557).  In the absence of any allegations describing the actions intentionally taken, or the omissions which breached a duty owed to plaintiffs, plaintiffs have failed to state a plausible claim for relief. Accordingly, defendant Officers' Motion is granted with respect to Officers Lasassa and Saulsbury as to Counts VIII, IX, and X.

### vi.   Counts X – Against Officer Devine

Plaintiffs assert a claim of gross negligence, set forth in Count X, against Officer Devine. With respect to Count X, Officer Devine moves to dismiss, arguing that plaintiffs' Complaint "merely affirm the Officers' testimony that that [sic] a barking dog charged them and that Officer Devine shot the dog in self-defense."  (ECF No. 31-1 at 21).  To the contrary, the allegations of plaintiffs' Complaint, taken as true, suggest that Officer Devine failed to act reasonably, and recklessly shot Bella without first using "any other less lethal implement available to him, including, but not limited to, his voice, hands, feet, baton, mace or simply leaving [p]laintiffs' yard[.]"  (ECF No. 1 ⁋ 25).  Additionally, plaintiffs state that Officer Devine had the opportunity to leave the yard, as Officer Saulsbury had when the dog exited plaintiffs' home, and decided not to do so.  (Id. ⁋ 26).  These allegations, taken together with plaintiffs' contention that Bella was 10 feet from the nearest officer and had not attacked any of the officers, adequately alleges that Officer Devine's decision to shoot Bella was a reckless and intentional failure to reasonably perform his

duties.  (Id. ¶¶ 22, 23-24).  Accordingly, plaintiffs state a plausible claim of gross negligence as to Officer Devine and, therefore, with respect to Officer Devine, defendant Officers' Motion is denied as to Count X.

### vii.   Officer Devine's Claims of Immunity

Officer Devine moves to dismiss all counts of plaintiffs' Complaint, stating that he is entitled to (1) qualified immunity for all counts based upon violations of the federal constitution, set forth in Counts I, II, and V, (2) public official immunity for all counts based upon violations of state tort law claims, set forth in Counts IV, VIII, IX, and X, and (3) statutory immunity for all counts of plaintiffs Complaint, pursuant to Maryland Code, Local Gov't Art., § 13-105.  (ECF No. 31-1 at 17-20).

Officer Devine contends that he is entitled to qualified immunity such that all counts based upon violations of the federal constitution, set forth in Counts I, II and V, should be dismissed. (ECF No. 31-1 at 17-19).  "Qualified immunity 'shield[s] [officials] from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  Ray, 948 F.3d at 228 (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Officer Devine argues that because his actions were reasonable in entering the fenced in yard and in shooting plaintiffs' dog, he is entitled to qualified immunity.  (Id.)  According to Officer Devine, he is entitled to qualified immunity unless "a reasonable officer in [his] position would have understood that his conduct was unlawful at the time of the shooting."  Id.  Plaintiffs assert that their right to be free from the unlawful seizure of their dog was clearly established at the time the shooting took place.  (ECF No. 42 at 28).  Indeed, "since at least 2003," the United States Supreme Court has "placed [officers] on fair notice/warning that [plaintiffs] had a clearly established right to enjoy [their] dog," free from unreasonable intrusion.  Ray, 948 F.3d at 229.

Assuming the truth of the allegations of plaintiffs' Complaint, that Mr. Myers called the dogs to return to him, Bella was 10 feet away when Officer Devine shot the dog, and the dog had not bitten Officer Devine or any other person, (ECF No. 1 at ¶¶ 19-21), Officer Devine could not have held a reasonable belief that the dog posed a threat to himself or others.  Accordingly, Officer Devine has not established that he is entitled to qualified immunity.

Officer Devine further contends that he is entitled to public official immunity from all state law tort claims, set forth in Counts IV, VIII, IX, and X.  (ECF No. 31-1 at 18).  In Maryland, public official immunity is extended only to "[a]n official of a municipal corporation, while acting in a discretionary capacity, without malice."  Md. Code, Cts. & Jud. Proc. § 5-507(a)(1).  "A governmental actor enjoys a certain public official immunity for his or her non-malicious acts if it is determined that: (1) he is a 'public official,' and (2) his tortious conduct occurred while he was performing discretionary acts in furtherance of his duties."  McGowan v. Prince George's Cnty., Maryland, 401 F. Supp. 3d 564, 571 (D. Md. 2019).  "Actual malice is established by proof that the officials intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff."  Dunbar v. Biedlingmaier, No. DKC-20-738, 2022 WL 814293, at *8 (D. Md. Mar. 17, 2022).

Because police officers are public officials under Maryland law, the court must evaluate only whether Officer Devine was engaged in a discretionary act, and whether that action was taken within the scope of his official duties.  Robinson v. Bd. Of Cnty. Comm'rs for Prince George's Cnty., 278 A.2d 71, 74 (Md. 1971).  Plaintiffs contend that Officer Devine's actions did not constitute "discretionary functions."  (ECF No. 42 at 28-30).  To qualify as a discretionary function, the decision must involve "an exercise of personal judgment," and be of the type for

"which the police power of the State should be utilized." Johnson v. Baltimore Police Dep't., 452 F. Supp. 3d 283, 298 (D. Md. 2020) (finding that defendants' assertion of immunity failed at the motion to dismiss stage of the proceedings because defendant officers "had no reason at all to initiate their pursuit" of plaintiffs). Here, plaintiffs have sufficiently alleged that Officer Devine was not engaged in any legitimate law enforcement action when he arrived at plaintiffs' home the day Bella was shot. (ECF No. 1 ¶¶ 13, 27-28). In fact, plaintiffs allege that it was not standard procedure to return the belongings of an arrestee to his family, or personally inform the family of an arrest. (Id.) Further, Officer Devine did not have Mr. Hindman's belongings in his possession at the time he arrived at plaintiffs' home. It is reasonable to infer, from the allegations of plaintiffs' Complaint, that there was no reason for Officer Devine to be at plaintiffs' home.

Even if Officer Devine was engaged in his duties as a law enforcement officer, plaintiffs' Complaint gives rise to the reasonable inference that Officer Devine acted maliciously in shooting plaintiffs' dog. Taking plaintiffs' allegations as true, Officer Devine's decision to go to plaintiffs' home was motivated by an incident that occurred nearly a year prior to this shooting involving the Cecil County Sheriff's Department, in which Bella was shot in the leg by a Cecil County Sheriff Deputy. (Id. ¶¶ 30-41). Indeed, plaintiffs allege that Officer Devine was aware of the prior shooting and that it was the actual reason he came to be at plaintiffs' house that evening. (Id.) At the current stage of the proceedings, therefore, Officer Devine's assertion of public official immunity fails.

Finally, Officer Devine asserts that "because [he] was being attacked by the dog, he is entitled to statutory immunity," as to all counts of plaintiffs' Complaint pursuant to Maryland Code, Local Gov't § 13-105. (ECF No. 31-1 at 20). Local Government Article, § 13-105 provides that "a person may kill a dog that the person sees in the act of. . . attacking a human being" and

that the person "is immune from any civil liability or criminal penalty for the killing."  Plaintiffs have sufficiently alleged facts that when taken as true, establish that plaintiffs' dog was not attacking Officer Devine or anyone else when Officer Devine shot her.  Plaintiffs' Complaint alleges that "Bella had not bitten or otherwise injured [Officer Devine], or any other officer prior to the shooting" and "did not pose any threat to [Officer Devine], or to any other person."  (ECF No. 1 ¶¶ 23-24).  In fact, plaintiffs allege that, at the time Officer Devine shot Bella, she was approximately 10 feet away from him. (Id. ¶ 21).  Given the allegations in plaintiffs' Complaint and the reasonable inferences the court draws therefrom, Officer Devine's assertion of statutory immunity fails.  In sum, the court concludes that at this stage, Officer Devine's claims of immunity fail.

### C. **Defendant Town's Motion to Dismiss**

Defendant Town moves to dismiss Counts I, II, IV, V, VII, VIII, and IX of plaintiffs' Complaint pursuant to Rule 12(b)(6), for failure to state a claim on which relief can be granted. (ECF No. 32).  With respect to Counts III and VI defendant Town moves for summary judgment pursuant to Rule 56.  (Id.)

### i. **Counts I, II, V – Against defendant Town**

As to Counts I, II, and V, defendant Town argues that plaintiffs fail to state a claim for municipal liability pursuant to 42 U.S.C. § 1983 and Article 24 of the Maryland Declaration of Rights.  (ECF No. 32-1 at 6).  A municipality is liable pursuant to § 1983 if it "causes a deprivation through an official policy or custom."  Peters v. City of Mount Rainier, No. GJH-14-00955, 2014 WL 4855032, at *4 (D. Md. Sept. 29, 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)).  A municipality, however, is liable only for its own illegal acts and may not be held liable under the theory of respondeat superior solely for the acts of an employee.  Owens v. Balt.

City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014) (citing Monell, 436 U.S. at 691). "Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the sine qua non of Monell liability." Id.  Defendant Town contends that because a municipality cannot be held vicariously liable under the federal constitution, pursuant to § 1983, Counts I, III, and V must be dismissed.  (ECF No. 32-1 at 6).  Plaintiffs concede that because they did not plead sufficient facts to state a plausible Monell claim, as required to hold defendant Town vicariously liable, these counts must be dismissed with regard to defendant Town. (ECF No. 36 at 7).  Accordingly, the court grants defendant Town's Motion as to Counts I, II, and V.

### ii. Counts IV, VII, VIII and IX – Against defendant Town

Defendant Town contends that Counts IV, VII, VIII and IX, plaintiffs' alleged state common law and intentional tort law claims must be dismissed on the grounds of governmental immunity.  (ECF No. 32-1 at 3).  Specifically, defendant Town asserts that "municipalities are immune from suit with respect to non-constitutional torts when they exercise 'governmental' rather than 'proprietary' or 'corporate' functions." (Id.)  Plaintiffs argue that defendant Town is liable pursuant to the Local Government Tort Claims Act ("LGTCA"), which provides that the "local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment," unless "the employee acted with actual malice."  Md. Code, Cts. & Jud. Proc. §§ 5-302(b)(2), 5-303(b).  To that end, plaintiffs assert that if the jury was to determine that defendant Officers acted without actual malice, defendant Town would be liable, and thus, these counts should not be dismissed.  (ECF No. 36 at 19).

Under Maryland law, "counties enjoy governmental immunity from tort liability with respect to 'non-constitutional torts based on activity categorized as governmental.'" Paulone v. City of Frederick, 787 F. Supp. 2d 360, 376 (D. Md. 2011).  The LGTCA "does not serve to create a cause of action against the local governments or their employees." Rounds v. Maryland-Nat. Capital Park & Planning Comm'n., 109 A.3d 639, 650 (Md. 2015).  Instead, "'[t]he only actions which can be brought directly against a local government are those authorized by law, which is separate and distinct from the LGTCA.'"  Id. (quoting Williams v. Maynard, 754 A.2d 379, 388 (Md. 2000)).  The LGTCA "does not authorize the maintenance of a suit directly against the local government[,]" but rather requires that "the local government must defend and indemnify an employee for acts occurring within the scope of his or her employment."  Williams v. Prince George's Cnty., 685 A.2d 884, 898 (Md. Ct. Spec. App. 1996).  Accordingly, although defendant Town may be liable for any judgment entered against defendant Officers (in the absence of a finding of actual malice), it is not liable in its own right, and, therefore, the court will grant defendant Town's Motion as to Counts IV, VII, VIII and IX.

**D.      Motions for Summary Judgment**

Both defendant Officers and defendant Town move for summary judgment.  Defendant Officers move for summary judgment as to all counts and defendant Town moves for summary judgment in its favor with respect to Counts III and VI.  (ECF No. 31-1 at 1, 32 at 7).  Neither defendant Officers nor defendant Town make a specific argument why summary judgment, rather than dismissal, should be granted with respect to any counts of the Complaint.  Under the circumstances of this case, a motion for summary judgment is clearly premature.  Pursuant to Rule 12(d), a motion to dismiss for failure to state a claim upon which relief can be granted is converted into a motion for summary judgment if "matters outside the pleadings are presented to and not

excluded by the court" and all parties are given "a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Given that material facts remain in dispute, summary judgment in favor of defendants would be inappropriate in this case.  Accordingly, the court declines to convert either defendant Officers' or defendant Town's Motions to Dismiss to Motions for Summary Judgment.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' Motion to Substitute Party (ECF No. 33) is GRANTED.  Heather Myers, Personal Representative of the Estate of James Myers, shall be substituted as the proper party for James Myers, decedent.  Defendant Officers' Motion (ECF No. 31) is GRANTED in part and DENIED in part.  As to Officer Lasassa, Counts V through X are dismissed, and Officer Lasassa is dismissed from this case.  As to Officer Saulsbury, Counts VIII, IX, and X are dismissed.  As to Officer Devine, Count II is dismissed.  Defendant Town's Motion (ECF No. 32) is GRANTED in part and DENIED in part.  Specifically, defendant Town's Motion is granted as to Counts I, II, IV, V, VII, VIII, and IX.  Defendant Officers' and defendant Town's Motions for summary Judgment are denied without prejudice.[3]  A separate order will be issued.


Date: February 24, 2023                          /s/_____
                                                 Beth P. Gesner
                                                 Chief United States Magistrate Judge

---

[3] The following counts remain: (1) Counts I, III, and IV through X against defendant Officer Devine, (2) Counts V, VI, and VII against defendant Officer Saulsbury, and (3) Counts III and VI against defendant Town.